IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

MICHAEL LEDELL TURNER,

                Plaintiff,                                OPINION AND ORDER

       v.                                              23-cv-229-wmc

JAIL SGT. KREE, SGT. TURNER,
FLOOR OFFICER ABBY SACKMANN,[1]
and CHIEF DEPUTY COREY DASSOW,

                Defendants.

_____

      As a state prison inmate representing himself, plaintiff Michael Ledell Turner was granted leave to proceed with the following due process and equal protection claims stemming from his confinement as a pretrial detainee at the Taylor County Jail: (1) that Floor Officer Abby Sackmann wrongfully placed him in administrative segregation for punitive purposes because of his race; (2) that Sergeants Kevin Kree and Jesse Turner violated his right to procedural due process in connection with his placement in administrative segregation; (3) that Sergeants Kree and Turner also exposed him to adverse conditions and deprived him of legal documents while in administrative segregation because of his race; and (4) that Chief Deputy Corey Dassow denied his grievances because of his race. (Dkt. #12, at 3-5; Dkt. #33, at 2-3.)

      Defendants have moved for summary judgment, arguing that plaintiff cannot prove a constitutional violation. (Dkt. #43.) In response, plaintiff cross-moved for summary judgment in response. (Dkt. #49.) Because the court finds that no reasonable jury could rule in favor

_____

[1] The court modifies the caption to reflect that the correct spelling of defendant Abby Sackman's surname is "Sackmann."

of plaintiff on the undisputed facts of record, defendants' motion for summary judgment will be granted and plaintiff's motion will be denied.

UNDISPUTED FACTS[2]

Plaintiff Michael Ledell Turner is currently incarcerated by the Wisconsin Department of Corrections at Waupun Correctional Institution.  (Dkt. #57, ¶ 1.)  While plaintiff was still a pretrial detainee, he was transferred from the Marathon County Jail to the Taylor County Jail on January 20, 2023, and placed in C Block, which is a medium security cell block.  (*Id.* at ¶ 10.)  The following day, plaintiff was involved in an altercation with approximately five other inmates over the use of a television remote.  (*Id.* at ¶¶ 11, 19.)  Correctional Officers Tyler Paul, Brian Decker, Abby Sackmann, and Brock Rickert intervened in the incident.  (*Id.* at ¶¶ 12-14, 19.)

Since his arrival at the Taylor County Jail, one of the other inmates involved in the altercation subsequently complained that plaintiff had been trying to "run" the cell block and further that plaintiff had threatened him with raised fists while trying to control access to the television.  (*Id.* at ¶¶ 15, 18.)  Plaintiff admitted to Officer Decker that the altercation started

---

[2] In support of his cross-motion for summary judgment, plaintiff submitted a brief and proposed findings of fact.  (Dkt. ##51-52.)  However, plaintiff failed to comply with the court's "Summary Judgment Procedure for Pro Se Litigants (Judge Conley)," which states that "[t]he court will not search the record for factual evidence. Even if there is evidence in the record to support your position on summary judgment, if you do not propose a finding of fact with the proper citation, the court will not consider that evidence when deciding the motion."  (Attachment to the Preliminary Pretrial Conference Order, dkt. #25, at 9.)  Only properly proposed facts are accepted as undisputed, unless the opposing party responds properly and places the fact in issue.  *Id.*  Since plaintiff has failed to follow procedure, defendants' proposed findings of facts (dkt. #45), as set forth in their reply to plaintiff's response to those facts (dkt. #57), will be taken as undisputed to the extent that they are supported by evidence in the record.  *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020) ("This court has repeatedly recognized that district courts may require exact compliance with their local rules.").

over the television remote, but he denied threatening another inmate or raising his fists. (*Id.* at ¶ 19.) Officer Decker asked plaintiff "whether there would be further conflict over the television if he remained in C Block, and Plaintiff responded 'probably,'" because he "would not be denied watching what he wanted to." (*Id.* at ¶¶ 20, 22.) To prevent further conflict in C Block, Officer Decker decided to move plaintiff to J Block. (*Id.* at ¶¶ 23-24, 33.)

While J-Block is designated as a maximum-security block, jail leadership has the authority to classify an inmate's stay in any block at whatever security level they deem necessary. (*Id.* at ¶ 34.) Here, Sergeants Kevin Kree and Jesse Turner decided to keep plaintiff in J Block in the interest of safety and jail security, while waiting to speak with the classification committee and a supervisor about where plaintiff should be housed. (*Id.* at ¶¶ 28, 33.) Sergeant Kree concluded that placing plaintiff in "protective segregation when he appeared to be the source of the conflict was the most efficient and the safest plan of action, and from a logistical perspective it made more sense to move one inmate rather than moving five other inmates." (*Id.* at ¶ 31.)

On January 25, 2023, Taylor County Jail staff received a grievance from plaintiff, who complained that he was unable to possess all of his legal materials in his J Block cell. (*Id.* at ¶ 38.) At all times relevant to this case, Taylor County Jail had a policy, applicable to all inmates, that limited the amount of personal property inmates could possess in their cells:

> All personal items must be kept on inmate's shelf, in their storage bin, or other approved storage. Items stored on the shelf will be kept to a minimum. No items are to be attached to the walls in any way. If accumulated items become excessive, including but not limited to legal paperwork (determined at jail staff's discretion), it will be removed and placed in your property bag. Nothing is to be placed over the windows or on the windowsills

(*Id.* at ¶ 8.)  Under this policy, inmates are not permitted to maintain excessive amount of paper documents in their cell if jail staff believes the amount could create unsanitary conditions or conceal contraband.  (*Id.* at ¶ 9.)

Due to the volume of plaintiff's legal documents, staff determined that he could not keep all of his papers in his cell.  (*Id.* at ¶ 45.)  Instead, plaintiff was provided with several opportunities to visit the law library, where he could work with all his legal documents at once. (*Id.* at ¶¶ 39, 41, 44, 50, 66, 77.)  Jail staff also offered to "trade out" materials requested by plaintiff.  (*Id.* at ¶¶ 68-69.)  Ultimately, Chief Deputy Dassow denied plaintiff's grievance regarding access to all of his legal documents in his cell, finding that plaintiff has been given a reasonable opportunity to review his documents even though the timing of the library visits did not always work for plaintiff.  (*Id*. at ¶ 78.)

On January 28, 2023, approximately one week after his placement in J Block, the classification committee decided to classify plaintiff as a medium security inmate while he resided there.  (*Id.* at ¶¶ 51-52.)  As a result, plaintiff had the same privileges as other medium security inmates, including being able to watch television later in the day, later lockdowns, and less lock out times, as well as access to phones, a wireless IPAD tablet, in-person visits, and the library, which had puzzles and games.  (*Id.* at ¶¶ 53-56, 61, 66.)  Plaintiff also had access to available programming, including church and school.  (*Id*. at ¶ 67.)

On February 2, 2023, jail staff members received another grievance from plaintiff about his placement in J Block.  (*Id.* at ¶ 70.)  Sergeant Kree denied plaintiff's grievance, citing the need for safety and security within the Taylor County Jail and noting that plaintiff had previously received a battery-by-prisoner charge at the Marathon County Jail.[3]  (*Id.* at ¶¶ 71-

---

[3] Public records reflect that plaintiff was charged with battery by a prisoner in Marathon County

72.)  Sergeant Kree explained that he did not know "the circumstances or what even happened in this charge," but did not want plaintiff to get another, similar charge while in Taylor County Jail.  (*Id*. at ¶ 72.)  After plaintiff filed an appeal, Chief Deputy Dassow affirmed Kree's decision, finding that:  (1) plaintiff's placement in J Block was based on safety concerns; and (2) plaintiff remained classified as a medium security inmate with all the privileges afforded by that classification.  (*Id*. at ¶ 76.)

On February 3, 2023, plaintiff was moved from J Block to the medium security B Block. (*Id.* at ¶¶ 74-75.)  Sergeants Kree and Turner also agreed that it would be better for plaintiff's mental health if he were housed with other inmates in medium security, because he could share a cell with another inmate and would be able to have more interaction with other people throughout the day.  On February 8, 2023, plaintiff was transferred back to Marathon County Jail.[4]  (*Id.* at ¶ 79.)

OPINION

To prevail under 42 U.S.C. § 1983, plaintiff must prove that defendants Kree, Turner, Sackmann, and Dassow: (1) deprived him of a federally protected right; and (2) "were acting

---

Case No. 2021CF1383.  *See* Wisconsin Circuit Court Access at: https://wicourts.gov (last accessed Dec. 2, 2025).  Those charges were dismissed, but read into the record when plaintiff entered a guilty plea in 2024 to charges of first-degree intentional homicide, possession of a firearm by a convicted felon, possession of THC, and possession of drug paraphernalia in Marathon County Case No. 2021CF693.

[4] Plaintiff also provides a report from the Marathon County Sheriff's Office, explaining that he was sent to the Taylor County Jail for safekeeping after originally being sent to the Lincoln County Jail, which declined to take him after plaintiff threatened to interfere with jail operations and to "cause disturbances as a means to manipulate his housing assignment."  (Dkt. #60, at 1.) As a result of plaintiff's threatening behavior, Taylor County concluded it was not feasible to continue housing him there.  (*Id*.)

under color of state law." *Wilson v. Warren Cnty.*, 830 F.3d 464, 468 (7th Cir. 2016). Here, the court granted plaintiff leave to proceed with claims that these defendants violated his Fourteenth Amendment rights to due process and equal protection when he was placed in administrative segregation in a maximum-security cell block at the Taylor County Jail between January 21 and February 3, 2023. (Dkt. #12 and Dkt. #33.)

Both parties have moved for summary judgment, which the court must grant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

The fact that the parties filed cross motions for summary judgment does not alter this standard. Rather, in evaluating each party's motion, the court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (internal quotation and citation omitted). Further, the party opposing a motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted). To survive summary judgment, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087-88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986)).  Although plaintiff is a *pro se* litigant, he is still subject to the same burden as non-*pro se* litigants at the summary judgment stage.  *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011).

## A.  Claims Against Defendant Sackmann

Plaintiff claims that defendant Sackmann violated his right to due process and equal protection by placing him in J Block for punitive purposes because of his race.  However, to be held liable for a constitutional violation under 42 U.S.C. § 1983, a defendant must have been personally involved in the constitutional violation.  *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *see also Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under [42 U.S.C.] § 1983 . . . requires personal involvement in the alleged constitutional deprivation."); *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (Section 1983 lawsuits "require personal involvement in the alleged constitutional deprivation to support a viable claim.").  In contrast, the record at summary judgment shows that defendant Sackmann had *no* involvement in the decision to place plaintiff in J Block.  (Dkt. #57, ¶ 29.)  Absent evidence that Sackmann was personally involved in the decision to place plaintiff in J Block, no reasonable jury could find that she violated his rights in connection with that placement.  Therefore, defendant Sackman is entitled to summary judgment on the claims against her.

## B.  Due Process Claims Against Defendants Kree and Turner

Plaintiff also contends that defendants Kree and Turner violated his right to procedural due process under the Fourteenth Amendment by placing him in J Block without a hearing.

Plaintiff contends further that Sergeants Kree and Turner decided to place him in J Block based on an incident that occurred two years earlier at another jail, apparently referencing the battery-by-prisoner charge lodged against him previously at Marathon County Jail.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. To succeed on a procedural due process claim, plaintiff must establish both: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). To the extent that plaintiff is claiming that defendants Kree and Turner wrongfully deprived him of a liberty interest by placing him in administrative segregation, however, he must show that moving him from C Block to J Block imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In assessing whether segregation amounts to a constitutional violation in particular, courts look to "the combined import of the duration of the segregative confinement and the conditions endured." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009).

Here, plaintiff's due process claims fail at the outset because he does not demonstrate that he was deprived of a *protected* liberty interest when Sergeants Kree and Turner placed him in J Block. First, defendants explain that plaintiff was not afforded a hearing before being assigned to J Block because the placement was *not* done for disciplinary reasons. (Kree Decl. (dkt. #47) ¶ 12.) Instead, plaintiff was moved to administrative segregation for safety and security reasons after he was involved in an altercation with five other inmates on C Block. (*Id*.) Inmates "have no liberty interest in avoiding transfer to discretionary segregation -- that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v.*

*Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008).  Thus, while the Due Process Clause affords certain procedural protections before an inmate faces disciplinary measures, there is no right to a hearing or other procedural safeguards before an inmate can be placed in administrative segregation for the purpose of institutional safety and security.  *See Hall-Bey v. Hanks*, 93 F. App'x 977, 981, 2004 WL 627016, at *3 (7th Cir. 2004) ("Administrative segregation for the purposes of institutional safety and security does not trigger a due process right to a hearing.") (citing *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002)).

Second, plaintiff's stay in J Block was short in duration, lasting at most from January 21, 2023, through February 3, 2023, when he was moved to medium security B Block. Prisoners generally do not have a liberty interest in avoiding *brief* periods of segregation, whether administrative *or* disciplinary.  *See Sandin*, 515 U.S. at 483-86; *Marion*, 559 F.3d at 697-98.  For example, the Supreme Court in *Sandin* found that a thirty-day assignment to segregated confinement did not implicate a liberty interest under the Due Process Clause, because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Sandin*, 515 U.S. at 485.  There was certainly no such departure here.  To begin, while J Block may have been designated a maximum-security cell block, the evidence shows that plaintiff was classified as a medium security inmate within no more than a week and thereafter had the same privileges available to other medium security inmates, including television privileges later in the day, less lock out times, later lockdowns, and access to phones, a tablet, in-person visits, and the library, which had puzzles and games.  (Kree Decl. (dkt. #47) ¶¶ 14, 20-29; Dkt. #46-2, at 6.)  While plaintiff argues that his conditions in J Block were unduly harsh because the Wi-Fi seldom worked, but defendants present evidence that internet outages were affecting all inmates at the Jail during this time due to router issues.  (Kree Decl.

(dkt. #47) ¶ 21.)  Regardless, intermittent Wi-Fi service for a few days does not rise to a dramatic departure from basic jail conditions.

Based on this record, therefore, plaintiff does not demonstrate that the conditions of his confinement in J Block were any more severe than those in C Block, where he was previously held, nor that he was wrongfully denied a hearing before being placed in J Block.  Because no reasonable jury could find that plaintiff's brief stay in J Block resulted in an "atypical and significant hardship," *Sandin*, 515 U.S. at 484, plaintiff fails to demonstrate that he was deprived of a protected liberty interest without adequate process.  Accordingly, defendants Kree and Turner are entitled to summary judgment on plaintiff's Fourteenth Amendment due process claim.

## C.  Equal Protection Claims Against Defendants Kree and Turner

Plaintiff next alleges that defendants Kree and Turner violated his right to equal protection under the Fourteenth Amendment by exposing him to adverse conditions of confinement and depriving him of legal documents in J Block because of his race.  Under the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  It protects against intentional and arbitrary discrimination.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

To succeed on his claim that defendants violated his right to equal protection, plaintiff "must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001).  To

demonstrate that defendants' actions had a discriminatory effect, plaintiff must show that: he is a member of a protected class; he is similarly situated to members of an unprotected class, and he was treated differently from members of the unprotected class. *Id.* at 636. To prove that defendants were motivated by a discriminatory purpose, plaintiff must show that they chose a particular course of action "at least in part '*because of*,' not merely 'in spite of,' its adverse effects upon an identifiable group." *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979))(emphasis added).

Plaintiff appears to argue that Sergeants Kree and Turner's decision to place him in J Block had discriminatory effect because he was placed in administrative segregation, while the five other inmates who participated in the altercation remained in medium security C Block. In particular, since the other inmates were white, plaintiff reasons that Kree and Turner must have decided to place him in administrative segregation because he is black. (Dkt. #51, at 6.) However, plaintiff presents no evidence to refute defendants' explanation that his placement in J Block was made in the interest of efficiency and institutional safety, which are "legitimate penological" concerns. *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). Plaintiff's only support for an alternative, discriminatory motive is his own speculation that he was placed in J Block because of his race, but conclusory statements based on conjecture cannot sustain a non-movant's burden on summary judgment. *See Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946-47 (7th Cir. 2024) ("Speculation cannot create a genuine issue of fact that defeats summary judgment.") (citations omitted). This is especially true where the straightforward answer -- that plaintiff was the newest member of the cell block with a grievance over the use of the TV remote and his removal would solve this problem most efficiently -- appears the likely one.

11

As discussed previously, plaintiff also has not shown that he was subjected to a sufficiently adverse condition of confinement while he was housed in J Block to constitute an "atypical and significant hardship." *Sandin*, 515 U.S. at 484.  Likewise, plaintiff has not shown that Sergeants Kree or Turner denied him access to his legal documents.  Rather, it is undisputed by plaintiff that Taylor County Jail's policy regarding excessive personal property, including legal documents, applied to all inmates, regardless of which block they were housed in, to prevent unsanitary or unsafe conditions.  (Dkt. #57, ¶¶ 8-9.)  Although jail personnel decided that plaintiff possessed too many legal documents to keep them all in his cell, he was given the same opportunities to visit the law library and work with all his papers at once without regard to his race.  (*Id.* at ¶¶ 39, 43, 47, 50, 66, 77.)  Since plaintiff has not raised a genuine fact issue or shown that a reasonable jury could find that his right to equal protection was violated when he was placed in J Block, therefore, defendants Kree and Turner are entitled to summary judgment on these claims as well.

### D.  Claims Against Defendant Dassow

Finally, plaintiff claims that Chief Deputy Dassow violated his right to equal protection by denying the grievances he filed about lack of access to his legal papers and his accommodations in J Block because he is black.  However, defendants present evidence showing that Dassow denied plaintiff's grievance about his legal papers after finding that plaintiff had been given "a reasonable opportunity to review [his] legal paperwork."  (Dkt. #46-2, at 9.)  Similarly, Dassow denied plaintiff's grievance about being placed in J Block after finding that the accommodations were made to keep plaintiff and other inmates safe, noting in particular

that plaintiff remained "classified as a medium inmate, thus getting all the privileges afforded by that classification."  (*Id*. at 1.)

The U.S. Constitution does not require a jail to have a grievance procedure.  *Shorter v. Lawson*, 403 F. Supp. 2d 703, 706 (S.D. Ind. 2005).  Likewise, inmates who file grievances do not have a right to obtain any particular outcome.  *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005); *see also Wilson v. Vannatta*, 291 F. Supp. 2d 811, 819 (N.D. Ind. 2003) ("The right to petition the government for grievances does not guarantee a favorable response, or indeed any response, from government officials."); *Bakr v. Walker*, Civ. No. 10-627, 2011 WL 884134, at *4 (S.D. Ill. March 11, 2011) ("[A prisoner] has no constitutional right to have his grievance resolved in his favor.").

Here, plaintiff presents no evidence showing that Dassow's responses to the grievances were unreasonable nor that they were denied due to plaintiff's race.  As with his claims against Kree and Turner, plaintiff's only support for his claim against Dassow is his own speculation, which is insufficient to defeat a summary judgment motion.  *Flowers*, 105 F.4th at 946-47.  Because no reasonable jury could find that defendant Dassow violated plaintiff's rights when responding to his grievances, Dassow is also entitled to summary judgment and, absent a valid claim against any defendant, this case will be dismissed.


ORDER

IT IS ORDERED that:

1) The motion for summary judgment filed by defendants Sergeant Kevin Kree, Sergeant Jesse Turner, Officer Abby Sackmann, and Chief Deputy Corey Dassow (dkt. #43) is GRANTED.

2) The cross-motion for summary judgment filed by plaintiff Michael Ledell Turner (dkt. #49) is DENIED.

3)  The clerk of court is directed to enter judgment and close this case.

Entered this 26th day of January, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge